**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

ROSS AND LAURA OLDENKAMP,   )
                            )
    Plaintiffs,             )
                            )
v.                          )   Case No. 07-CV-601-TCK-PJC
                            )
UNITED AMERICAN INSURANCE   )
COMPANY,                    )
                            )
    Defendant.              )

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel Discovery Responses Including Request for Spoliation Sanctions [Dkt. # 19]. For the reasons set forth below, the Motion to Compel and the Request for Spoliation Sanctions are **DENIED**.

**I**
*Background*

This case concerns denial of benefits under a health insurance policy issued by Defendant United American Insurance Company ("UA") to the Plaintiffs ("the Oldenkamps"). The Oldenkamps purchased an insurance policy from UA on August 1, 2006. Approximately six weeks later, the Oldenkamps' minor son underwent surgery to have a cyst removed from near his eye. The Oldenkamps submitted an insurance claim which UA denied on March 6, 2007, stating that the surgery was for a pre-existing condition not covered by the policy. The Oldenkamps sued for breach of contract and bad faith.

The dispute now before the Court concerns UA's responses to discovery requests

propounded by the Oldenkamps. Plaintiffs contend that documents responsive to their Requests for Production have not been produced and that UA has either destroyed these documents or failed to preserve them after being aware of possible litigation. Specifically, Plaintiffs claim that recordings of telephone conversations between Plaintiffs and UA or between Plaintiffs' doctor's office and UA have not been produced and have been destroyed, that e-mails relevant to the Oldenkamps' claim were not produced and were destroyed and that UA failed to preserve or destroyed internal company Telephone Communication Reports ("TCR") sent by UA Customer Service Representatives to UA claims handlers. Plaintiffs ask the Court to compel UA to produce the documents that have not been produced or to sanction UA for spoliation of evidence by instructing the jury at trial that an adverse inference may be drawn from the fact that evidence was destroyed.

UA states that it has produced all emails, and recordings of telephone conversations regarding the Oldenkamps' claim, that no records of any kind have been destroyed and that a litigation hold was put in place to preserve evidence.

## II
### *Legal Standard*

Rule 37 of the Federal Rules of Civil Procedure provides a mechanism for a party to secure discovery from a recalcitrant opponent. Under appropriate circumstances, a party may seek a Court order to secure discovery that has not been provided:

> A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
>
> (i) a deponent fails to answer a question asked under Rule 30 or 31;
> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
> (iii) a party fails to answer an interrogatory submitted under Rule 33; or

2

>> (iv) a party fails to respond that inspection will be permitted--or fails to permit inspection--as requested under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B).

Of course, a party cannot be ordered to produce that which does not exist. The record evidence must establish that documents exist. A motion to compel will be denied where the responding party states under oath that all responsive documents have been produced. *See GP Industries, LLC v. Eran Industries, Inc.*, 2006 WL 3290306, at *4 (D.Neb. Nov. 13, 2006.); *Carmichael v. Riley*, 2007 WL 3374942, at *5 (W.D.Wash.Nov. 6, 2007).

"Spoliation" is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y.2004) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). A party seeking an adverse inference instruction based on spoliation of evidence must establish three things: (1) that the party having control over the evidence had an obligation to preserve it; (2) that the records were destroyed with a "culpable" state of mind; and, (3) that the destroyed evidence was relevant to the movant's claims or defenses. *Id.* A litigant has a duty to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation. *Benton v. Dlorah, Inc.*, 2007 WL 3231431, at *4 (D.Kan. Oct. 30, 2007).

An adverse inference instruction is a powerful sanction. It "brands" a party as a "bad actor" and opens the door to speculation by the jurors who are instructed they may infer the presence of harmful information "in the unknown contents of [for example] an erased audiotape." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900-01 (8th Cir. 2004).

Consequently, many courts require evidence of intentional destruction or bad faith before granting a request for a spoliation instruction. *Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1219-20 (10th Cir. 2008). In the Tenth Circuit, mere negligence is not sufficient. *Id.*

### III
### *Discussion*

**A.     Motion to Compel.**

Plaintiffs seek to compel production of recorded statements, recorded telephone conversation between UA and Plaintiffs or healthcare providers regarding the subject of this action and email and electronic communication regarding the claim. The flaw in Plaintiffs' Motion to Compel is that – with one exception – there is no record evidence that any such materials exist. At a hearing held September 11, 2008, UA's counsel stated that UA has produced all documents responsive to Plaintiffs' documents requests. On Sept. 25, 2008, in response to a directive of this Court, Defendant filed a Verification stating that UA "has produced all responsive, non-privileged electronic mail messages, recordings of telephone calls, and internal company Telephone Communications Referrals known to exist." Since US has now sworn under oath that all responsive documents have been produced, the Motion to Compel will be denied.[1] *Carmichael,* 2007 WL 3374942, at *5.

**B.     Request for Spoliation Instruction.**

Plaintiffs contend that UA has destroyed relevant documents, including telephone records, e-mails and UA internal TCRs. UA denies this assertion.

---

[1]     *See* Exhibit "A" to Defendant's Response to Court Order Regarding Verification [Dkt. # 46].

**(1)     E-Mail.**

In support of their contention that UA has destroyed relevant e-mails, the Oldenkamps point to UA's Policies and Procedures Regarding Security and Use of Company Equipment ("Policies and Procedures") (Exhibit "4" to the Motion to Compel). This policy notes that:

> There are legal implications regarding the use of e-mail, in that e-mail and other forms of electronic communications are potentially discoverable.… Sensitive messages should be deleted from your Inbox as soon as possible. Also, any sensitive messages you send will remain in your Sent Items folder unless deleted. After deleting messages from either of these folders, they should be purged from your Deleted Items folder as soon as possible, as deleting a message from your Inbox or Sent Items folder does not necessarily mean the message is gone. If you do not delete messages from your Deleted Items folder, they could remain on the E-mail server.

Policies and Procedures ¶ 6.1 (Exhibit "4" to Motion to Compel).

UA has produced only one e-mail string relevant to this case – and that was produced only after Plaintiffs' counsel pointed out a reference to the e-mail in a recorded telephone conversation that UA produced. Thus, Plaintiffs argument is essentially this: 1) UA has a company policy of destroying "sensitive" e-mails "as soon as possible; 2) Only one e-mail was produced; and, therefore, 3) UA must have destroyed relevant e-mails. The problem with this argument is the same as with all *post hoc* arguments. The e-mail destruction policy does not necessarily mean any responsive e-mails were destroyed. There must be some proof that relevant e-mails existed and that UA destroyed them intentionally. Plaintiffs have offered no evidence that any relevant e-mails existed, nor that any were destroyed.

Plaintiffs argue that they cannot be forced to prove e-mails were destroyed because UA has not produced evidence of any. This is an unpersuasive and circular

argument.   Plaintiffs must offer *some* evidence that relevant documents have been destroyed.  For example, in *Zubulake*, *supra* – a case relied on by Plaintiffs – evidence was proffered to show a likelihood of spoliation.  In *Zubulake* an equities trader specializing in Asian securities sued her former employer for gender discrimination, failure to promote and retaliation under federal, state, and city law.  Plaintiff moved for sanctions for UBS's failure to preserve relevant backup tapes and UBS's destruction of relevant e-mails.  As a sanction, the Court ordered UBS to pay for the re-deposing of several UBS employees so that Plaintiff could inquire about certain newly-restored e-mails.  *Zubulake*, 229 F.R.D. at 426.

During the course of these re-depositions, Plaintiff learned of more deleted e-mails as well as e-mails that had been preserved but not produced.  E-mails that *were* produced referenced others that *were not* produced.  Thus, Zubulake was able to come forward with significant evidence that UBS employees had deleted relevant e-mails.  The Court noted:

> At least one e-mail has been irretrievably lost; the existence of that e-mail is known only because of oblique references to it in other correspondence. It has already been shown that Chapin – the alleged primary discriminator – deleted relevant e-mails. In addition to those e-mails, Zubulake has evidence suggesting that Chapin deleted at least one other e-mail that has been lost entirely. An e-mail from Chapin sent at 10:47 AM on September 21, 2001, asks Kim to send him a "document" recounting a conversation between Zubulake and a co-worker. Approximately 45 minutes later, Chapin sent an e-mail complaining about Zubulake to his boss and to the human resources employees handling Zubulake's case purporting to contain a verbatim recitation of a conversation between Zubulake and her co-worker, as overheard by Kim. This conversation allegedly took place on September 18, 2001, at 10:58 AM. There is reason to believe that immediately after that conversation, Kim sent Chapin an e-mail that contained the verbatim quotation that appears in Chapin's September 21 e-mail-the "document" that Chapin sought from Kim just prior to sending that e-mail-and that Chapin deleted it.  That e-mail, however, has never been recovered and is apparently lost.

6

*Id.* at 426-27.

Thus, before the court granted the request for spoliation sanctions, Zubulake provided evidence – albeit circumstantial – that e-mails had existed and either were destroyed or otherwise not produced. Here, Plaintiffs have offered no evidence that any relevant e-mails existed or that any were destroyed. Consequently, there is no basis to find that spoliation occurred or to enter such a drastic sanction.

**(2)     Recordings of Telephone Conversations with UA Representatives.**

Plaintiffs state that they and their doctor's office had multiple conversations with UA regarding coverage for their son's surgery. Plaintiffs have asked for recordings of all such telephone conversations. Several have been produced, but UA states that other telephone conversations were never recorded in the first instance. Plaintiffs complain that telephone recordings were destroyed. Plaintiffs' logical premise is that UA recorded *all* telephone conversations with customers or physicians. That premise is not well-founded. UA's counsel stated at the Sept. 11 hearing that *not* all telephone calls to the company are recorded. UA has produced recordings of six such conversations, but states that this is all the company has. Again, Plaintiffs have offered no evidence to suggest that all conversations were recorded and no evidence that any particular recording was destroyed. There is no record evidence to warrant a spoliation finding.

**(3)     Electronic Communication:  Telephone Communications Referral.**

One particular conversation between the Plaintiffs and a UA Customer Service Representative deserves special attention. On February 28, 2007, Mrs. Oldenkamp spoke

7

with Natasha Washington, a Customer Service Representative for UA.[2]  Mrs. Oldenkamp complained that UA had not paid her son's medical bill.  Ms. Washington reportedly stated that the claim seemed to be eligible for payment and that she would send a TCR to the claims handler asking her to pull the file and reprocess it for payment.  At first, in response to Plaintiffs discovery request, UA could not find a recording of this conversation and no record of the TCR.  UA's attorney told Plaintiffs' counsel by letter that the TCR from Natasha Washington ("Washington") on Feb. 28, 2008, "no longer exists.  United American's policy is to destroy telephone communications referrals after 90 days."  (Exhibit "1" to Motion to Compel).  Thereafter, UA changed its position.  It notified Plaintiffs that (1) it had found a telephone recording of Mrs. Oldenkamp's conversation with Washington and (2) that no TCRs were ever destroyed, but that the TCR that Washington supposedly created could not be found.  UA's change in story has probably engendered suspicion that has fueled the present discovery dispute; however, there is no record evidence to indicate that UA's change in position is anything other than an innocent mistake.

The recording of the telephone conversation between Mrs. Oldenkamp and Ms. Washington indicates that Washington created a TCR requesting that someone pull the claims file and re-process it.  The recording produced by UA spells out what Washington apparently wrote in this TCR:

> **Ms. Washington**:  What it is is basically a telecommunications referral
> that I'm sending over to Globe[3] to have them pull that claim and reprocess

---

[2]  UA has stated in discovery responses that it anticipated litigation as of February 19, 2008.  Thus, records relevant to the Okldenkamps' claim should have been preserved from that date forward.

[3]  "Globe" is apparently a reference to Globe Life and Accident Insurance Company or Globe Marketing Services, affiliates of UA.  (Motion to Compel, Exhibit "4").

> it again, because there shouldn't have been a reason why they shouldn't have processed that for you.
>
> \*     \*     \*
>
> Basically what I've written over to them is to have them look at the claim, date of service is September 18th, 2006, for Kaleb Oldenkamp, claim should have been – benefit is covered in policy, per diagnosis code. So they're going to pull that and look at that again and hopefully we can get that payment sent out to them. Like I said, I'm going to send it over to them today I did note in my system and you can just check in periodically to see, just call in and just ask the status for the date of service of September 18th. … That way they can pull up the notes and tell you what's going on with your claim.

(Transcript of telephone conversation between Mrs. Oldenkamp and Ms. Washington, Feb. 28, 2007, at 6 & 8).

Although UA now says that no TCRs have ever been destroyed, the company cannot find the TCR that Washington supposedly wrote.[4] If Washington did, in fact, create and send a TCR regarding the Oldenkamps' claim, the content of such a TCR is clear from the telephone recording of Mrs. Oldenkamp's conversation with her. While there is evidence that Washington created a TCR that cannot be located, there is no evidence that any such TCR was intentionally destroyed. Nor have the Plaintiffs suffered any prejudice given the contents of the Oldenkamp-Washington telephone recording. Clearly, Washington intended to ask someone to re-examine the Oldenkamps' claim. UA ultimately denied the claim about one week after the Oldenkamps' phone conversation with Washington – final denial came on March 6, 2007. Whether this denial of the claim was due to Washington's request for reprocessing or occurred independently, is unclear.

## IV
### *Conclusion*

Based on the record evidence submitted by the parties, the Court finds as follows:

---

[4] Washington might be able to shed some light on the matter; however, she no longer works for UA and the company says that her current whereabouts are unknown.

1. UA has verified that all emails, telephone recordings and TCRs relevant to Plaintiffs' claims have been produced or otherwise accounted for; therefore, the Motion to Compel is **DENIED.**

2. No record evidence of destruction of documents has been proffered to support sanctions for spoliation of evidence; therefore the request for spoliation sanctions is also **DENIED**.

IT IS SO ORDERED this 21st day of October 2008.

Paul J. Cleary
United States Magistrate Judge